[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the plaintiffs seek the return of an $18,000 real estate deposit with interest. The deposit was pursuant to a contract entered into between the parties to this litigation; in which the plaintiffs were the buyers and defendants the sellers. (Exhibit (2).
The contract contained a contingency clause which provided in pertinent part: "Offer is contingent upon Purchaser's approval of the result of a home inspection, a termite inspection and a radon gas inspection."
The plaintiffs retained a home building inspector who performed the home and radon gas inspection. The inspector provided a report to plaintiff (Exhibit #7) indicating that the results were "well below the level that concerns the EPA". The report also indicated that as to the radon level found: "Exposures in this range (1 to 4pCi/L) do present some risk, to the more sensitive occupants, of contracting lung cancer. However, reductions of concentration this low may be difficult, and sometimes impossible, to achieve. If the screening measurement result is less than 4pCi/L, a follow up measurement is not necessary. . . ."
The plaintiffs' inspector indicated at trial that it would be unlikely to get a lower reading in Connecticut.
The plaintiffs offered evidence of their preparation for the closing. (Exhibits 4, 5, 6 and testimony of Joseph Pannone) and of their intent to close until their receipt of the radon test result on September 23, 1988.
Mr. Pannone also testified concerning his sensitivity to anything connected to radioactivity; resulting from his exposure to radiation during the Korean War service in the U.S. Air Force. The service included missions as an airplane radio operator, monitoring radiation levels resulting from Soviet atomic testing.
Evidence was also introduced to demonstrate that his concern was long standing (Exhibit 8, 9, and 10), though Mr. Pannone currently enjoys good health.
The plaintiffs, by letter of September 26, 1988, cancelled the contract and demanded the return of the deposit.
The plaintiffs have never tested their current residence for radon gas, though they have resided there for four years. Plaintiffs had on two occasions prior to the September 26, 1988 cancellation attempted to cancel the agreement because of CT Page 4845 perceived failure of the defendant-sellers to perform conditions under the contract.
The parties had a verbal dispute on the premises on September 26, 1988 prior to the cancellation letter being transmitted.
The authority which directs the court's resolution of this difficult case is found in our Supreme Court's decision in Warner v. Konover, 210 Conn. 150 (1988) and Central New Haven Development Corporation v. LaCrepe, 177 Conn. 212 (1979). The cases rely on the Restatement (Second) of Contracts which provides: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."210 Conn. at 154, 177 Conn. at 217.
The plaintiffs were thus obligated to exercise this discretion in reviewing the radon gas inspection results in good faith and fair dealing.
In Warner v. Konover, the court recognized that good faith may be distinct from reasonableness, and establishes standards for determining good faith at 210 Conn. 155:
 . . . . Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness. 2 Restatement. (Second), Contracts (1981) Section 205; see also E.A. Farnsworth, Contracts (1982) Section 7.17, pp. 526-28. Another commentator has suggested that, in arm's length transactions, the good faith performance doctrine permits the exercise of discretion for any purpose reasonably within the contemplation of the parties but forbids the exercise of discretion for the purpose of recapturing opportunities forgone at the formation of the contract. S. Burton, "Breach of Contract and the Common Law Duty to Perform in Good Faith," 94 Harv. L. Rev. 369, 378-92 (1980). We have recognized a difference between good CT Page 4846 faith and commercial reasonableness in other instances. Funding Consultants, Inc. v. Aetna Casualty Surety Co., 187 Conn. 637, 642-43, 447 A.2d 1163 (1982); Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474-75, 427 A.2d 385
(1980).
Funding Consultants, Inc. v. Aetna, supra is especially helpful is reviewing the evidence relevant to subjective good faith, 127 Conn. at 642, 643.
In the instant case, the plaintiffs exercised their discretion in a manner which they could not justify in terms of objective reasonableness. It was, however, within the contemplation of the parties that the inspection contingencies were subject to "Purchaser's approval", and thus involved an element of personal satisfaction with results.
The court finds that under the circumstances of this case, the plaintiffs' exercise of discretion was subject to a standard of subjective good faith.
The long history of the plaintiff Joseph Pannone's perception of his cancer risk and phobia concerning radiation meets by the barest preponderance the burden of a rational though subjective good faith exercise of discretion.
The prior difficulties in the contract negotiations are attributable to the plaintiff Joseph Pannone's extremely exacting and difficult nature, and not as evidence of a desire to break the contract.
The court's conclusion is reinforced by the evidence that the plaintiffs have not subsequently purchased another home, or sought to renegotiate price with the defendants, or to recapture "opportunities foregone at the formation of the contract".
The plaintiffs seek, in addition to the return of their deposit other damages, but have failed to meet their burden of proof as to such claims.
Judgment enters for the Plaintiffs. Count One on their complaint awarding them the return of their deposit with accumulated interest. Judgment for Defendants on Counts Two and Three of Plaintiffs' Complaint. Judgment enters for Plaintiffs on Defendants' counterclaim.
Costs are not awarded to either party. CT Page 4847
McWEENY, J.